UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATHAN TEMPEY,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY,<br><br>　　　　　　　　　　Defendant. | Case No. 20-cv-5212 |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### Introduction

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, for declaratory, injunctive, and other appropriate relief to compel the release of agency records improperly withheld from Plaintiff Nathan Tempey ("Plaintiff" or "Tempey") by the United States Department of Homeland Security ("Defendant" or "DHS").

2. In response to a proper FOIA request submitted by Plaintiff seeking records concerning the issuance of a 2018 DHS press release entitled "We Must Secure The Border And Build The Wall To Make America Safe Again"[1] (the "2018 Press Release"), on an issue of national debate and importance, Defendant DHS materially and willfully violated FOIA.

3. FOIA requires that agencies (including DHS) make a determination with respect to FOIA requests within 20 working days; for Plaintiff's FOIA Request, DHS took *over 20 times* as long as statutorily permitted: over *400 working days*. Making matters worse, after all that time,

---

[1] Press Release, Department of Homeland Security, *We Must Secure The Border And Build The Wall To Make America Safe Again* (Feb. 15, 2018), https://www.dhs.gov/news/2018/02/15/we-must-secure-border-and-build-wall-make-america-safe-again.

DHS declined to disclose *any* documents in response to Plaintiff's FOIA Request, instead referring him to a scant twenty-four pages of documents publicly posted to DHS's website, nearly all of which were entirely redacted. Comparing the trivial "disclosure" to the breadth of the records sought in Plaintiff's FOIA Request, DHS's search and withholdings were facially inadequate and in contravention of FOIA. Moreover, DHS misapplied FOIA Exemptions 5 and 6—redacting almost the entirety of what minimal records were belatedly disclosed. DHS did not even make a threshold showing of FOIA Exemption 6's applicability—they failed to articulate any privacy interest at stake in the redaction of the names of government employees, as required. In omitting this threshold requirement, DHS expressly disregarded a remand order by the United States Coast Guard Office of the Chief Administrative Law Judge and FOIA. The stark dismissiveness of Plaintiff's reasonable requests, which were wholly permitted by the spirit and the letter of FOIA, requires that Plaintiff seek this Court's assistance in compelling DHS to do what the law requires them to do.

4. By their own admission, under the Trump Administration, DHS has radically reshaped a wide array of regulations and policies impacting immigration and security at the southern border, including the concept of building a wall across it.[2] These changes—by virtue of

---

[2] Speech, Department of Homeland Security, *Remarks as Prepared by Acting Secretary Chad F. Wolf Highlighting Border Security and Immigration Policies of the Trump Administration* (Oct. 22, 2020), https://www.dhs.gov/news/2020/10/22/remarks-prepared-acting-secretary-chad-f-wolf-highlighting-border-security-and.

their current and prospective impact on millions seeking emigration to the United States—have generated widespread interest and significant public attention.

5.	Plaintiff seeks to compel disclosure of documents responsive to 4 discrete categories of records, all of which pertain to the 2018 Press Release.  *See* Exhibit 1.

6.	Obtaining proper responses to Plaintiff's FOIA Request, as FOIA exists to permit, is crucial to facilitating public debate and accountability concerning DHS's role in developing and implementing immigration policy and securing the southern border.

## Jurisdiction and Venue

7.	This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

8.	Venue is proper in this Court under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e)(1).

## Parties

9.	Plaintiff Nathan Tempey is a freelance investigative journalist who has published articles in numerous publications, including the *New York Daily News*, *Vice*, *Curbed*, and elsewhere.  He has worked on staff at publications including *Gothamist* and *The Brooklyn Paper*.  For over a decade, he has covered housing, criminal justice, and public policy.  He is a resident of Brooklyn, New York.

10.	Defendant DHS is a cabinet-level Department of the Executive Branch of the United States government tasked with overseeing, *inter alia*, immigration enforcement, border security, and immigration detention, and is an agency of the federal government within the meaning of 5 U.S.C. § 552(f)(1).

## Statutory Framework

11. The Freedom of Information Act requires federal government agencies to release information upon proper request unless it is shown that disclosure is exempt pursuant to one of nine exemptions contained within the statute. 5 U.S.C. §§ 552(a), (b).

12. Pursuant to 5 U.S.C. § 552(a)(6)(A)(i), a federal agency shall make a determination in response to a FOIA request within 20 working days, shall immediately notify the requester of the determination, and shall provide reasons for the agency's determination as well as instructions for appeal.

13. This Court may assess attorney fees and litigation costs against the United States if Plaintiff substantially prevails in this action. 5 U.S.C. § 552(a)(4)(E).

## Factual Background

14. As a candidate for President of the United States, Donald J. Trump campaigned on a promise to build "The Wall" between the United States and Mexico and radically reshape immigration and enforcement at the southern border.[3] In a speech announcing his candidacy, Mr. Trump remarked:

> When Mexico sends its people, they're not sending their best. They're not sending you. They're not sending you. They're sending people that have lots of problems, and they're bringing those problems with [sic] us. They're bringing drugs. They're bringing crime. They're rapists. And some, I assume, are good people. But I speak to border guards and they tell us what we're getting. And it only makes common sense. It only makes common sense. They're sending us not the right people.[4]

---

[3] *Road to the White House 2016 Donald Trump Presidential Campaign Announcement*, C-SPAN (Jun. 16, 2015), available at https://www.c-span.org/video/?326473-1/donald-trump-presidential-campaign-announcement.

[4] Time Staff, *Here's Donald Trump's Presidential Announcement Speech*, Time Magazine (Jun. 16, 2015), https://time.com/3923128/donaldtrump-announcement-speech/.

4

This issue became a central part of his campaign.[5]

15. As promised, five days after taking the Oath of Office, President Trump issued an Executive Order (the "Order") outlining the policy of the Executive Branch to "secure the southern border of the United States through the immediate construction of a physical wall on the southern border, monitored and supported by adequate personnel so as to prevent illegal immigration, drug and human trafficking, and acts of terrorism."[6]

16. The Order increased the use of detention at the southern border—permitting the detention of individuals *merely suspected* of violating federal or state law—significantly increased detention capacity, and expanded DHS's use of expedited removal procedures.[7]

17. In December of 2017, the Trump Administration and DHS began to consider implementation of a series of enhanced deterrence measures to stem to the flow migrants trekking to the southern border.[8]

18. The myriad of abuses resulting from the Order and DHS's policies at and near the southern border have now been widely reported.[9]

---

[5] *See, e.g.*, Ben Terris, *Donald Trump begins 2016 bid, citing his outsider status*, The Washington Post (Jun. 16, 2015), available at https://wapo.st/2FW8w1Y.

[6] Exec. Order No. 13767, 82 Fed. Reg. 8793 (Jan. 25, 2017) (hereinafter the "Order"); *see Summary of Executive Order "Border Security and Immigration Enforcement Improvements*, American Immigration Council, available at https://www.americanimmigrationcouncil.org/sites/default/files/research/summary_of_executive_order_border_security_and_immigration_enforcement_improvements.pdf.

[7] *Id*.

[8] *See, e.g.*, Nick Miroff, *To curb illegal border crossings, Trump administration weighs new measures targeting families*, The Washington Post (Dec. 21, 2017), available at https://wapo.st/3e7WorD; Priscilla Alvarez, *Deterring Illegal Immigration by Separating Parents and Children*, The Atlantic (Dec. 27, 2017), available at https://www.theatlantic.com/politics/archive/2017/12/trumps-plan-to-deter-immigrants-from-coming-to-the-united-states/549221/.

[9] *See, e.g.*, Caitlin Dickerson, *'There Is a Stench': Soiled Clothes and No Baths for Migrant Children at a Texas Center*, The New York Times (Jun. 21, 2019), available at https://nyti.ms/2Iw1fEH; *In The Freezer: Abusive Conditions for Women and Children in US Immigration Holding Cells,* Human Rights Watch (Feb. 2018), available at https://www.hrw.org/sites/default/files/report_pdf/uscrd0218_web.pdf.

19.     In furtherance of its "commit[ment] to using all legal tools at its disposal to secure [the] nation's borders"[10] the Trump Administration and DHS thereafter outlined plans for more than 700 miles of new and replacement barriers for the Administration's planned wall along the southwest border.[11]

20.     On February 15, 2018, DHS issued the 2018 Press Release, the development, background, and messaging of which is the subject of Plaintiff's FOIA Request.

21.     As was widely reported at the time,[12] the language used in 2018 Press Release, including the 14 word title—"We Must Secure The Border And Build The Wall To Make America Safe Again"—bore a resemblance to the syntactical structure of a common white supremacist slogan known as "The 14 Words"—"We Must Secure The Existence Of Our People And A Future For White Children."[13]

---

[10] *Id*.

[11] Laura Meckler, *Trump Administration Seeks $18 Billion Over Decade to Expand Border Wall*, The Wall Street Journal (Jan. 5, 2018), available at https://on.wsj.com/2HDInW7.

[12] *See, e.g.*, Colin Kalmbacher, *Twitter Explodes After Homeland Security Headline Appears to Mimic '14 Words' Neo-Nazi Slogan*, Law & Crime (Jul. 6, 2018), available at https://lawandcrime.com/high-profile/twitter-explodes-after-homeland-security-headline-appears-to-mimic-14-words-neo-nazi-slogan/; Chauncey Devega, *Did Trump administration send a coded signal to neo-Nazis? Maybe not — but is that reassuring?*, Salon (Jul. 6, 2018), available at https://www.salon.com/2018/07/06/did-trump-administration-send-a-coded-signal-to-neo-nazis-maybe-not-but-is-that-reassuring/.

[13] 14 Words, Anti-Defamation League, available at https://www.adl.org/education/references/hate-symbols/14-words.

22. The presence and tolerance of white nationalistic views among certain members of the government has taken on an even greater focus following President Trump's refusal to denounce white supremacy in the first presidential debate of 2020.[14]

23. Days earlier, on September 8, 2020, the former head of DHS's intelligence branch alleged in a whistle-blower complaint that top officials with DHS directed agency analysts to downplay the threat of white supremacists in agency intelligence assessments.[15]

24. Public interest and attention to DHS's role in developing, implementing, and enforcing immigration policy has only grown as widespread reporting has outlined the human impact of these policies[16] and drawn connections to anti-immigrant and white nationalistic views both inside the Trump Administration and DHS.[17]

---

[14] Sarah McCammon, *From Debate Stage, Trump Declines To Denounce White Supremacy*, NPR (Sep. 8, 2019), available at https://www.npr.org/2020/09/30/918483794/from-debate-stage-trump-declines-to-denounce-white-supremacy.

[15] Zolan Kanno-Youngs, Nicholas Fando, *D.H.S. Downplayed Threats From Russia and White Supremacists, Whistle-Blower Says*, The New York Times (Sep. 9, 2020), available at https://nyti.ms/33hrlod.

[16] Caitlin Dickerson, *Parents of 545 Children Separated at the Border Cannot Be Found*, The New York Times (Oct. 21, 2020), available at https://nyti.ms/2HjGoGI.

[17] *See, e.g.*, Kim Bellware, The Washington Post (Nov. 13, 2019), *Leaked Stephen Miller emails show Trump's point man on immigration promoted white nationalism, SPLC reports*, available at https://wapo.st/2IWWNkS; Rosie Gray, *Emails Link Former Homeland Security Official to White Nationalists*, The Atlantic (Aug. 28, 2018), available at https://www.theatlantic.com/politics/archive/2018/08/emails-link-former-dhs-policy-analyst-to-white-nationalists/568843/; Brendan O'Connor, *The Eugenicist Doctor and the Vast Fortune Behind Trump's Immigration Regime*, Splinter (Jul. 5, 2018), available at https://splinternews.com/the-eugenicist-doctor-and-the-vast-fortune-behind-trump-1827322435; Michael Edison Hayden, *Trump Official Brought Hate Connections to the White House*, Southern Poverty Law Center (Oct. 21, 2020), available at https://www.splcenter.org/hatewatch/2020/10/21/trump-official-brought-hate-connections-white-house.

**Plaintiff's FOIA Request**

25. On or about August 9, 2018, Plaintiff submitted a FOIA request to DHS (the "Request"). A true and correct copy of the Request is attached to this Complaint as Exhibit 1, and is incorporated by reference herein.

26. Plaintiff's Request sought records concerning the following topics:

    a. "All documentation used in formulating the [2018 Press Release], including program announcements, records generated at meetings, events, press conferences and/or interviews, and any other significant documentation used in formulating the release."

    b. "Background material including background papers, news clippings, documents on program activities, reports on program and policy developments, news releases, fact sheets, and other reference material used in formulating the [2018 Press Release]."

    c. "All messages from senior leadership of the public affairs office to public affairs employees announcing new policies and revisions to existing policies from January 1, 2018 to the present."

    d. "All correspondence between public affairs employees and reporters regarding the [2018 Press Release], from February 1, 2018 to the present.

27. Plaintiff's Request sought a waiver of fees on the grounds that disclosure of the requested records was "in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester[s]." *See* 5 U.S.C. § 552(a)(4)(A)(iii); 6 C.F.R. § 5.11(k). Plaintiff further sought a waiver of search fees on the grounds that Plaintiff was a journalist and

that the records were sought "as part of news gathering and not for a commercial use." *See* 5 U.S.C. § 552(a)(4)(A)(ii)(II); 6 C.F.R. § 5.11(d)(1)).

### DHS's Insufficient Responses to FOIA Request

28. On August 14, 2018, DHS responded with an acknowledgement of Plaintiff's Request. A true and correct copy of Plaintiff's e-mail correspondence with DHS is attached to this Complaint as Exhibit 2, and is incorporated by reference herein.

29. Despite repeated requests for updates, Plaintiff did not receive another update on the status of his Request until July 30, 2019—almost a year after submission of his Request—when the DHS Privacy Office ("PRIV") informed him that "the estimated completion [of his Request] [wa]s undetermined at the moment" and that "[t]ypically the White House takes about a year or so to get back on consults." *See* Exhibit 2.

30. By early 2020, Plaintiff had yet to receive a substantive response from DHS or PRIV, and in an email dated January 5, 2020, sought a status update, noting that "[i]t is nearing a year and a half since I filed [this Request]." *Id*.

31. In his January 5, 2020 correspondence, Plaintiff also sought confirmation that his Request was being upheld by White House, as he had previously been told. *Id*.

32. That same day, Plaintiff received another response from PRIV "apologiz[ing]" that it was "not able to process your request by our initial estimated date of completion[,]" but that "[a]t this time your request is still under review." *Id*.

33. Plaintiff followed up five more times—specifically, on January 9, 30, February 17, 24, and March 20, 2020—concerning the status of his Request, but received no further response until late March. *Id*.

34. Nearly two years after Plaintiff's Request was initially submitted, James V.L.M. Holzer, Deputy Chief FOIA Officer for DHS, responded by letter dated March 27, 2020 (the "March 2020 Letter"), denying Plaintiff's Request. A true and correct copy of the March 2020 Letter is attached to this Complaint as Exhibit 3, and is incorporated by reference herein.

35. In lieu of producing responsive materials to Plaintiff's Request, DHS referred Plaintiff to twenty-four pages of heavily redacted documents publicly posted to DHS's website as of the date of the March 2020 Letter.[18] *See* Exhibit 3.

36. The overwhelming amount of redactions and lack of explanation make adequate determination of DHS's compliance difficult, if not impossible.

37. Indeed, the DHS Documents were redacted to such a substantial degree that the materials were essentially not produced at all.

38. On information and belief, DHS withheld numerous records responsive to Plaintiff's Requests without legal justification.

39. For example, Plaintiff sought "correspondence between public affairs employees and reporters regarding the [2018 Press Release], from February 1, 2018 to the present."

40. As has been widely reported, DHS's press office provided statements to reporters in response to news coverage concerning the 2018 Press Release,[19] yet no such correspondence appeared in the DHS Documents.

41. Moreover, despite the fact that Plaintiff's Request sought records from February 1, 2018 to Present, the DHS Documents consisted of records from only 2 days: February 12 and 13,

---

[18] Hereinafter, the "DHS Documents."  Available at https://www.dhs.gov/publication/documents-related-february-2018-press-release-regarding-border-wall.
[19] *See, e.g.*, Blake Montgomery, *Homeland Security Officials Say Claims That Statement Mimics A White Supremacist Slogan Are Merely Conspiracy Theories*, BuzzFeed (Jun. 28, 2018), available at https://www.buzzfeednews.com/article/blakemontgomery/homeland-security-statement-theory.

2020.

42. The DHS Documents are—with limited exception—almost entirely redacted on the basis of Exemptions 5[20] and 6,[21] yet no complete justification for such redactions has been offered, even *after* the conclusion of Plaintiff's Administrative Appeal.

43. In addition to declining to make a determination concerning waiver of fees because "the cost [wa]s below the $25 minimum[,]" the March 2020 Letter also confirmed receipt of Plaintiff's Request on August 10, 2018. *See* Exhibit 3.

44. Notwithstanding DHS's obligation to make a determination on Plaintiff's FOIA Request within 20 working days, DHS's final response took over ***400 working days*** to process.

45. The March 2020 Letter also failed to outline the reasons underlying the agency's response, as the statute requires.

### **Plaintiff's Administrative Appeal**

46. On April 7, 2020, Plaintiff timely filed an administrative appeal, challenging DHS's response to Plaintiff's Request on the basis that, *inter alia*, DHS:

    a. Performed an inadequate search and failed to produce responsive information pursuant to his Request;

    b. Failed to provide an index of the portions of the documents that have been withheld as well as a sufficiently detailed description for the withheld material;

---

[20] Exemption 5 protects inter-agency or intra-agency memorandums or letters that "would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Generally, this includes materials falling under the deliberative process privilege (or executive privilege), attorney work-product privilege, and the attorney client privilege.

[21] Exemption 6 generally protects the privacy interests of individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

11

      c.      Failed to provide any reasonably segregable portions of responsive records;

      d.      Improperly applied Exemptions 5 and 6; and

      e.      Failed to properly explain the application of Exemptions 5 and 6; and Acted arbitrarily and capriciously by redacting without explanation and withholding the portion of Plaintiff's Request concerning communication with reporters about the DHS Press Release (Plaintiff's "Administrative Appeal").

A true and correct copy of Plaintiff's Administrative Appeal is attached to this Complaint as Exhibit 4, and is incorporated by reference herein.

47.    Specifically, Plaintiff objected to DHS's plainly insufficient search, inadequate production, and incorrect reliance on Exemptions 5 and 6 in redacting nearly all of what appeared to constitute routine government communications and the names and email addresses of a myriad of government employees. *See* Exhibit 4.

48.    By letter, dated April 9, 2020, Bradley E. White, Senior Director, Litigation, Appeals, and Policy at DHS, notified Plaintiff that DHS had received his Administrative Appeal.

## The Initial FOIA Appeal Decision

49.    On June 11, 2020, Plaintiff received a letter from Sarah M. Grabenstein ("Grabenstein"), Attorney Advisor, United States Coast Guard, informing him that "the United States Coast Guard Office of the Chief Administrative Law Judge" (the "ALJ") would be "reviewing the FOIA appeals for the Department of Homeland Security General Counsel's office" and that "the Office of the Chief Administrative Law Judge will be rendering the official appeal

decision on behalf of the Department of Homeland Security." A true and correct copy of the Initial FOIA Appeal Decision is attached to this Complaint as Exhibit 5, and is incorporated by reference herein.

50. The ALJ incorrectly held that DHS and PRIV had properly redacted the information under Exemption 5—finding that the "edits and comments contained in the redacted portions reflect recommendations and opinions on policy matters communicated among DHS employees and employees at the Executive Office of the President"—but remanded and directed DHS and PRIV to provide a supplemental responses concerning its decision to redact the email addresses and names of government employees under Exemption 6, and provide more information regarding DHS's search for documents responsive to Plaintiff's Request concerning "correspondence between public affairs employees and reporters." (hereinafter the "Initial FOIA Appeal Decision"). *See* Exhibit 5.

51. The ALJ did not address Plaintiff's argument on appeal that DHS failed to search and produce materials responsive to the other topics contained in Plaintiff's Request, including:

    a.     "All documentation used in formulating the [2018 Press Release], including program announcements, records generated at meetings, events, press conferences and/or interviews, and any other significant documentation used in formulating the release."

    b.     "Background material including background papers, news clippings, documents on program activities, reports on program and policy

        developments, news releases, fact sheets, and other reference material used in formulating the [2018 Press Release]."

   c.   "All messages from senior leadership of the public affairs office to public affairs employees announcing new policies and revisions to existing policies from January 1, 2018 to the present."

### The Final FOIA Appeal Decision

52.    Thereafter, on July 15, 2020, the ALJ issued its final decision on Plaintiff's FOIA Request (hereinafter the "Final FOIA Appeal Decision"). A true and correct copy of the Final FOIA Appeal Decision is attached to this Complaint as Exhibit 6, and is incorporated by reference herein.

53.    Regarding DHS's decision to redact the email addresses of government employees mentioned in the record, the ALJ incorrectly held that DHS and PRIV provided a satisfactory explanation to demonstrate a privacy interest at stake. *See* Exhibit 6.

54.    The redaction of the names of government employees, however, "was withheld by the White House when the records were sent . . . for review, and [PRIV] would not challenge the White House's decision." *Id*.

55.    Thus, because DHS's "response did not address the threshold requirements for withholding under Exemption 6 (i.e., the information must be contained in personnel, medical, or similar files, and it must be of such a nature that disclosure would constitute a clearly unwarranted invasion of personal privacy)[,]" the ALJ held that he "disagree[d] with PRIV's justification for withholding." *Id*.

56.    The ALJ further found that DHS "did not uncover correspondence with reporters" and that DHS's search for records of "correspondence between public affairs employees and

reporters" was adequate in light of DHS's explanation that "email would have been the method that [DHS] transmitted the press release, and any communications related to the press release, to reporters." *Id*.

57. The ALJ's conclusion was baseless. Notwithstanding these assertions, DHS's press office did in fact provide statements to reporters in response to news coverage concerning the 2018 Press Release as reflected by national news coverage concerning the 2018 Press Release.[22] However, no such correspondence appeared in the materials DHS published online.

58. Despite DHS's obligation to make a determination on Plaintiff's Administrative Appeal within 20 working days, DHS's Final FOIA Appeal Decision took nearly three times that—**over 60 working days**—to process.

59. The ALJ's Final FOIA Appeal Decision "[wa]s the final action of DHS concerning" Plaintiff's Administrative Appeal and provided Plaintiff with the right to "seek judicial review of this decision."

### Plaintiff's Final Efforts to Obtain the Unredacted Materials

60. In separate emails on July 13 and 14, 2020, Plaintiff repeatedly followed up regarding whether—in light of the ALJ's Final FOIA Appeal Decision—DHS would be disclosing additional unredacted materials.

61. On July 28, 2020, Grabenstein responded to Plaintiff's emails and noted that the ALJ's Final FOIA Appeal Decision was "the final action at the agency level for [Plaintiff's] FOIA Request" and that she "disagreed with PRIV's decision to redact some of the information

---

[22] *See, e.g.*, Blake Montgomery, *Homeland Security Officials Say Claims That Statement Mimics A White Supremacist Slogan Are Merely Conspiracy Theories*, BuzzFeed (Jun. 28, 2018), available at https://www.buzzfeednews.com/article/blakemontgomery/homeland-security-statement-theory.

(employees' names), but PRIV will not accede to my position, so I do not expect that PRIV will be sending you unredacted information." Exhibit 7.

   62. In a subsequent email on the same day, Grabenstein reiterated that "PRIV will not release the information after I explained to them my position on why it should not have been redacted." *Id*.

**First Claim for Relief**

**Violation of FOIA for Failure to Comply with Statutory Deadlines**

63. Plaintiff repeats and re-alleges the foregoing paragraphs.

64. Defendant is an agency subject to FOIA. 5 U.S.C. § 552(f)(1).

65. By Plaintiff's Request, Plaintiff properly sought records within the possession, custody and/or control of Defendant.

66. Defendant failed to make an initial determination and a determination on appeal with respect to Plaintiff's Request within the 20 working day deadline required by FOIA. 5 U.S.C. § 552(a)(6)(A).

67. Plaintiff has exhausted all applicable administrative remedies with respect to the Request.

**Second Claim for Relief**

**Violation of FOIA for Wrongful Withholding of Agency Records**

68. Plaintiff repeats and re-alleges the foregoing paragraphs.

69. Defendant is an agency subject to FOIA. 5 U.S.C. § 552(f)(1).

70. As an agency subject to FOIA and must release in response to a FOIA request any non-exempt records and provide a lawful reason for withholding such materials.

71. Plaintiff's Request properly sought records within the possession, custody and/or control of Defendant.

72. Defendant has improperly withheld records responsive to Plaintiff's Request by, *inter alia*, misapplying Exemptions 5 and 6 anfd failing to produce segregable and non-exempt material in response to Plaintiff's Request.

73. Defendant's improper redactions and failure to segregate and produce non-exempt

material in response to Plaintiff's Request violate Defendant's obligations under FOIA.

74. Defendant has failed to provide a lawful reason for withholding such materials.

75. Plaintiff has exhausted all applicable administrative remedies with respect to the Request.

### Third Claim for Relief

**Violation of FOIA for Defendant's Personnel in Processing Plaintiff's Request**

76. Plaintiff repeats and re-alleges the foregoing paragraphs.

77. Defendant is an agency subject to FOIA.  5 U.S.C. § 552(f)(1).

78. By Plaintiff's Request, Plaintiff properly sought records within the possession, custody and/or control of Defendant.

79. Defendant has not only improperly withheld agency records responsive to Plaintiff's Request, but the circumstances surrounding Defendant's withholdings indicate that agency personnel acted arbitrarily or capriciously with respect to those withholdings, including, *inter alia*, Defendant's refusal to put forth any legal justification for the withholding of names of government employees under Exemption 6.  5 U.S.C. § 552(a)(4)(F)(i).

80. Plaintiff has exhausted all applicable administrative remedies with respect to the Request.

### Fourth Claim for Relief

**Violation of FOIA for Failure to Conduct a Reasonable Search**

81. Plaintiff repeats and re-alleges the foregoing paragraphs.

82. Defendant is an agency subject to FOIA.  5 U.S.C. § 552(f)(1).

83. By Plaintiff's Request, Plaintiff properly sought records within the possession, custody and/or control of Defendants.

18

84. Defendant failed to conduct a proper or sufficient search for records responsive to Plaintiff's Request, as evidenced by Defendant's negligible production of a mere twenty-four pages and the fact that, notwithstanding Plaintiff's Request seeking records from February 1, 2018 to Present, the DHS Production consisted of records from only two days: February 12 and 13, 2020.

85. Defendant's failure to conduct a proper or sufficient search in response to Plaintiff's Request violates their obligations under FOIA.  5 U.S.C. § 552(a)(3).

86. Plaintiff has exhausted all applicable administrative remedies with respect to the Request.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully request that this Court:

1) Order Defendant to conduct a thorough search for all records responsive to Plaintiff's Request and demonstrate that it employed search methods reasonably calculated to uncover all records responsive to Plaintiff's Request;

2) Issue a declaration that Plaintiff is entitled to disclosure of the records responsive to Plaintiff's Request;

3) Order Defendant to immediately disclose all non-exempt records responsive to Plaintiff's Request in its entirety, as well as all non-exempt portions of responsive records;

4) Order Defendant to promptly provide an index pursuant to *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), and its progeny, inventorying all responsive records and itemizing and justifying all withholdings of responsive documents;

5) Enjoin Defendant from continuing to withhold any and all non-exempt records or portions thereof responsive to Plaintiff's Request;

6) Issue a declaration that the circumstances surrounding the withholding of records from Plaintiff raise questions as to whether agency personal acted arbitrarily or capriciously with respect to DHS's withholding of records pursuant to 5 U.S.C. § 552(a)(4)(F)(i);

7) Award Plaintiff reasonable attorney's fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E);

8) Grant such other relief as the Court may deem just and proper.

DATED: New York, New York
October 29, 2020

Respectfully submitted,

MITCHELL SILBERBERG & KNUPP LLP

By: /Eleanor M. Lackman/
Eleanor M. Lackman
Timothy M. Carter

437 Madison Ave., 25th Floor
New York, New York 10022-7001
Telephone: (212) 509-3900
Facsimile: (212) 509-7239
Email: eml@msk.com
tmc@msk.com

*Attorneys for Plaintiff*
*Nathan Tempey*