UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NATHAN TEMPEY,

        Plaintiff,

v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,

        Defendant.

Case No. 20-cv-5212 (ENV)(SJB)

# DECLARATION OF NATHAN TEMPEY

I, Nathan Tempey, am over the age of 18 and competent to testify to the matters below:

1. I am a freelance investigative journalist and have published articles in numerous publications, including the *New York Daily News*, *Vice*, *Curbed*, and elsewhere. I have worked on staff at publications including *Gothamist* and *The Brooklyn Paper*. For over a decade, I have covered housing, criminal justice, and public policy.

2. In order to cover public policy, I kept up to date with events and announcements from the administration of the former President of the United States, Donald J. Trump. This included press releases from executive branch agencies such as the United States Department of Homeland Security ("Defendant" or "DHS"). One such DHS press release (the "Press Release") is currently the subject of this Freedom of Information Act ("FOIA") request.

3. Attached hereto as **Exhibit 1** is a true and correct copy of the Press Release in question that DHS issued on February 15, 2018.

1

4. From a close reading of the text, other reporters and I[1] noticed that the language used in the 2018 Press Release, including its 14-word title—"We Must Secure The Border And Build The Wall to Make America Safe Again"—resembled the syntactical structure of a common white supremacist slogan known as "The 14 Words"—"We Must Secure The Existence Of Our People And A Future For White Children."[2]

5. The similarities between the content of the 2018 Press Release and President Trump's speeches and policies led me to believe that the White House either drafted or helped to draft the 2018 Press Release.

6. Given the potential connection between the 2018 Press Release and white supremacist language, there is a strong public interest in who specifically was responsible for the language at issue and their stated intentions in choosing it.

7. On August 9, 2018, I submitted a FOIA request to DHS requesting all documentation, background material, messages, and correspondence related to the drafting of the Press Release.[3] Other reporters were requesting similar information at this time.

8. The DHS acknowledged receipt of my request on August 14, 2018 but did not provide any further response.[4]

9. As outlined in our Complaint to this Court, beginning on November 14, 2018, I repeatedly reached out to DHS and asked it to advise me as to the status of my FOIA request. In

---

[1] *See, e.g.*, Colin Kalmbacher, *Twitter Explodes After Homeland Security Headline Appears to Mimic '14 Words' Neo-Nazi Slogan*, Law & Crime (Jul. 6, 2018), available at https://lawandcrime.com/high-profile/twitter-explodes-after-homeland-security-headline-appears-to-mimic-14-words-neo-nazi-slogan/; Chauncey Devega, *Did Trump administration send a coded signal to neo-Nazis? Maybe not — but is that reassuring?*, Salon (Jul. 6, 2018), available at https://www.salon.com/2018/07/06/did-trump-administration-send-a-coded-signal-to-neo-nazis-maybe-not-but-is-that-reassuring/.
[2] 14 Words, Anti-Defamation League, available at https://www.adl.org/education/references/hate-symbols/14-words.
[3] I understand that a copy of my request was attached to the Complaint as Exhibit 1.
[4] I understand that a copy of DHS's acknowledgement was attached to the Complaint as Exhibit 2, along with most of our other communications through March 20, 2020.

response, I was repeatedly ignored or provided with non-responsive answers explaining that DHS was not able to complete my request at that time.[5]

10. In one reply, dated July 30, 2019, DHS claimed, "Due to the voluminous number of records responsive to your request, the estimated completion is undetermined at the moment. Typically the White House takes about a year or so to get back on consults, but please keep in mind that this is only an estimate, and there are many factors that could affect this date."[6]

11. Since I was not getting any information in writing from DHS, I also sought information over the phone. I had a call with a FOIA analyst named James, who claimed that my request had been sent to the White House in March 2019 "because they have equity in it." I later requested email confirmation of the phone call with the analyst, and additionally asked DHS whether there was anyone I should contact in the White House's legal department, because both the July 30, 2019 email from DHS and the phone call with James seemed to suggest that the White House was involved with my FOIA request.[7]

12. DHS responded to my inquiry on January 9, 2020 with another message explaining that my request was still under review, and without any comment on my question concerning whether or not I should reach out to the White House.[8]

13. At the time that I followed up with DHS on January 30, 2020, the DHS website still listed the expected response date for my inquiry as September 29, 2018, over a year earlier. The agency eventually updated the expected response date to March 13, 2020, but also failed to produce anything to me by that date.

---

[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*

14. DHS did not make a decision regarding my FOIA request until March 27, 2020, nearly two years after I initially submitted it.[9] The agency's response after all that time was not even responsive: I was referred to 24 heavily redacted pages that had already been publicly posted to DHS's website as of the date that I received the letter.[10]

15. On April 7, 2020, I timely filed an administrative appeal challenging DHS's denial.[11] The administrative appeal did not lead to the release of any more responsive documents.

16. The Administrative Law Judge's final FOIA appeal decision was described as "the final action of DHS concerning" my appeal and provided me with the right to "seek judicial review of this decision."[12] As such, after several further fruitless attempts to communicate with DHS on July 13 and 14 of 2020, I filed the present action.

17. Since the filing of the present action, DHS has produced more responsive documents, but it has been a slow and incomplete process. On March 16, 2022, the agency released 236 pages of documents to me, but it claimed FOIA exemptions (b)(5) and (b)(6) in order to withhold 220 of those pages in full or in part. DHS further described one page as non-responsive, and withheld another 19 pages in order to send them to another agency for consultation before releasing them.

18. DHS did eventually produce some of the 19 pages sent elsewhere for confirmation, although two were withheld in full and 17 were withheld in part. And on April 21, 2021, the agency also produced a *Vaughn* index, which I received attached to a letter from Assistant U.S. Attorney Alex S. Weinberg. However, DHS is still wrongfully withholding certain information that should be made available pursuant to FOIA. For example, while I do not contest the agency's decision to

---

[9] *See* Compl., Ex. 3.
[10] *See id.*
[11] *See* Compl., Ex. 4.
[12] Compl., Ex. 6.

withhold certain names and email addresses for the sake of privacy, the title and position of the speakers should still be made available.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 5th day of October 2022.

/s/ Nathan Tempey
Nathan Tempey

5